**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **SHAMIAH SHARP, as mother, natural guardian and Next friend of Z.T., a minor, residents and citizens of Georgia,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION CASE NO. 7:23-cv-33-WLS** |
| **vs.** | ) | |
| **POLYMER 80, INC., A Nevada corporation, POLYMER80 ENTERPRISE PROPERTIES, LLC, A Nevada Limited Liability Company, And DELTATEAMTACTICAL.COM, A Utah Limited Liability Company d/b/a DELTA TEAM TACTICAL,** | ) | |
| **Defendants.** | ) | |

______________________________________________/

**RESPONSE AND BRIEF IN OPPOSITION TO MOTION TO DISMISS COMPLAINT BY DEFENDANTS POLYMER80, INC. AND POLYMER80 ENTERPRISE PROPERTIES, LLC**

Plaintiff SHAMIAH SHARP, as mother, natural guardian and next friend of Z.T., a minor, through undersigned counsel, responds in opposition to the Motion to Dismiss the Complaint and attached Memorandum of Law (DE 19, 20) filed by Defendants POLYMER80, INC. and POLYMER80 ENTERPRISE PROPERTIES, LLC. (collectively the POLYMER80 Defendants).

Plaintiff first notes that many of the arguments raised by the POLYMER80 Defendants track those raised by Codefendant DELTATEAMTACTICAL.COM d/b/a DELTA TEAM TACTICAL (DELTA) in its previously filed Motion to

Dismiss (DE 15, 15-1), to which Plaintiff has already responded (DE 21). To the extent the Plaintiff's Response to DELTA's Motion to Dismiss and supporting brief applies to the Motion to Dismiss and supporting memorandum filed by the POLYMER80 Defendants, the Plaintiff adopts that Response and incorporates it by reference herein.

**Personal Jurisdiction Over Defendant POLYMER80 ENTERPRISE PROPERTIES, LLC**

Defendant POLYMER80 ENTERPRISE PROPERTIES, LLC, specifically, argues that this Court lacks in personam jurisdiction over the claims against it. (DE 20 at 7-9). The POLYMER80 Defendants argue that, while Defendant POLYMER80, INC. does engage in the business of selling firearms and firearm components, presumably including components such as those described in the Complaint, POLYMER80 ENTERPRISE PROPERTIES, LLC does not, instead having been formed apparently for purpose of real property management and possession only. (DE 20-1 at ¶¶9-15). This argument is supported with a declaration from Loran L. Kelley, Jr., the principal of both POLYMER80 Defendants. (DE 20-1). Based on this declaration, the Plaintiff accepts the representation that only

POLYMER80, INC. rather than POLYMER80 ENTERPRISE PROPERTIES, LLC engages in the business of selling firearms and firearm components. The Plaintiff notes that POLYMER80, INC. has made no argument that the Court lacks in personam jurisdiction over it, and so has waived that argument pursuant to Federal Rule of Civil Procedure 12(h)(1).

**The Plaintiff has Alleged Claims for Negligence Per Se**

The POLYMER80 Defendants, like DELTA, cite the federal statutory definition of a "firearm" as set forth in 18 U.S.C. §921(a)(3), claiming that its products fall outside of that statutory definition on the convoluted grounds asserted in *Polymer80, Inc, v. Garland*, (DE 15-2, N.D. Tex. Case No. 4:23-cv-00029-O, March 19, 2023), upon which DELTA has also relied. Like DELTA, the POLYMER80 Defendants in their Motion overlook other law explaining the way in which the conduct described in the Complaint does violate federal law and does support a cause of action for negligence per se.

Section 921(a)(3) defines a "firearm" as:

> (A) Any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;
> (B) the frame or receiver of any such weapon;

(C) any firearm muffler or firearm silencer;
(D) any destructive device.

Paragraphs 12 and 13 of the Complaint (DE 1 at ¶¶12-13) describe in detail the methods by which the "firearm frame and receiver blanks" and accompanying "jigs," and assembly kits can "readily be converted" into fully functional firearms capable of expelling "a projectile by means of an explosive" as was done in this case. The kits may be "readily" converted into firearms "through simple steps" "using simple and readily available tools" "such as drilling a few holes, thereby creating a full firearm frame" and then "equally readily to assemble a useable firearm from the frame by adding components such as triggers, firing pins and slides." (DE 1 at ¶12). Paragraph 12 also alleges that the Defendants, including the POLYMER80 Defendants, provide instructions with their kits sold online so that purchasers may readily assemble a complete firearm; Paragraphs 13 and 22 point out that the instructions provided by those Defendants can be and are supplemented by instructional videos available online and that the minor purchaser J.C. was able to and did use those videos, supplementing the instructions provided by the Defendants, readily to assemble a completed and functional firearm from the components and kit she purchased online. (DE 1 at ¶¶13, 22).

The District Court of North Dakota, in *Morehouse Enterprises v. ATF*, 2022 WL 3597299, (D.N.D. Case No. 3:22-CV-116, August 23, 2022), a copy of which is attached to the Plaintiff's Response to DELTA's Motion to Dismiss (see DE 21-1), denied a motion for preliminary injunction against rules of the Bureau of Alcohol, Tobacco and Firearms intended to "clarify the definition of 'firearm'," to "provide a more comprehensive definition of 'frame and receiver'" that would "more accurately reflect firearm configurations not explicitly captured under the existing definitions," and that would "take into account technological developments and modern technology in the firearms industry." DE 21-1, *Morehouse* at 5, *citing* 86 Fed. Reg. 27720, 27725 (May 21, 2021).

The *Morehouse* court determined that the "weapon kits at issue" in *Morehouse*, similar to the ones described in the Complaint in this case, "fit squarely" within the federal statutory definition of a "firearm" because "after delivery, the kits are easily converted from mere parts into a weapon that expels a projectile," the very process described in the Complaint in this case. DE 21-1, *Morehouse* at 10. The *Morehouse* court pointed out that a "plain reading" of Section 921(a)(3) requires the term "firearm" to be defined "more broadly than simply a fully operational weapon,"

since "the statute expressly includes items that 'may readily be converted' to expel a projectile," even if those items are not sold in a format that can be used immediately or without some ready conversion process to expel projectiles. Thus, "a non-operational weapon, that can be made operational," particularly if it can "readily" be made so, such as the kits referenced in the Complaint, "qualifies as a firearm" under the plain meaning of the statute. Id. While an interlocutory appeal was filed in *Morehouse*, it has been dismissed by stipulation. (DE 21-2).

The POLYMER80 Defendants cite *Polymer80, Inc, v. Garland*, (DE 15-2, N.D. Tex. Case No. 4:23-cv-00029-O, March 19, 2023) for the proposition that the frame and receiver kits they sell are somehow excluded from the statutory definition of a "firearm," even though they are alleged to be and are "readily" convertible into fully operational weapons that can be fired to expel projectiles (as was done in this case). The court in *Garland* drew an artificial distinction between what it termed "weapons," i.e. operational firearms, and firearm components that cannot immediately be used as projectile firing weapons but can readily be converted into such weapons using simple tools and instructions. (DE 15-2 at 3-4, 13-14). This distinction is entirely artificial and, more importantly, inconsistent with the statutory

language of Section 921(a)(3), which as explained above and in *Morehouse* is clearly intended to cover items that may "readily be converted to expel a projectile," not merely items sold in a form already capable of expelling a projectile. The kit sold by the POLYMER80 Defendants and described in the Complaint falls clearly within the statutory definition of a firearm as explained in *Morehouse* and as should be obvious even from a cursory reading of Section 921(a)(3).

The applicability of the statutory definition to the POLYMER80 Defendants' products is not at all "ambiguous," as they erroneously suggest. The *Morehouse* decision makes it clear that Section 921(a)(3) applies as a matter of plain reading, without any reasonable ambiguity, notwithstanding the tortured attempt in *Polymer80, Inc. v. Garland* to divorce the statutory definitions from their plain and apparent meanings.

The POLYMER80 Defendants may argue, as Codefendant DELTA has, that the Bureau of Alcohol, Tobacco and Firearms promulgated supposedly new definitions of a firearm frame or receiver by rules promulgated after J.C. purchased her firearm kit, which DELTA argues are not retroactive. The *Morehouse* court, however, based its interpretation of the statutory terms in Section 921(a)(3) on its

plain reading of the statute, preceding any interpretation by the Bureau. It approved the new rules based, among other grounds, on their consistency with the statutory language, but did not depend on the promulgation of the rules, or on their retroactivity, to reach its conclusions about the plain and governing meaning of Section 921(a)(3).

The Complaint alleges the multiple ways in which the POLYMER80 Defendants' sale of the kit to J.C. violated federal statutory law, in particular laws against firearm sales to minors under the age of 18 and the restrictions on sales not conducted in person. *See* DE 1 at ¶16; 18 U.S.C. §922(b)(1); 18 U.S.C. §922(c)(1). Under Georgia law, such violations of federal gun control statutes can state a claim for negligence per se, as the POLYMER80 Defendants acknowledge in their memorandum. *See* DE 20 at 11, *citing West v. Mache of Cochran, Inc.*, 370 S.E.2d 169, 172 (Ga. App. 1988). Thus, the Plaintiff has stated a cause of action for negligence per se, and the POLYMER80 Defendants' various arguments that she has not (DE 20 at 10-15) should be rejected.

**The Plaintiff has Alternatively Pled a Claim for Negligent Entrustment under Applicable Georgia Law**

The POLYMER80 Defendants cite several Georgia decisions dealing with entrustment of a motor vehicle or similar equipment (such as a forklift), for the proposition that under Georgia law liability for negligent entrustment of a vehicle requires the entrustor to have actual knowledge of the entrustee's incompetence to operate the vehicle. *See, e.g., Williams v. Ngo*, 656 S.E.2d 193 (Ga. App. 2007). Firearms, however, are not motor vehicles. The primary purpose of a vehicle is to facilitate transportation, and the primary purpose of heavy equipment such as forklifts is to move objects. Any injury caused by vehicles or heavy equipment will ordinarily be unintended and always incident to their usual, intended purpose. Firearms, by contrast, are intended to be used as weapons, for self-defense or otherwise; their very purpose is to inflict or at least threaten injury. The danger inherent in irresponsible use of firearms is hence inherently greater than the danger posed by the irresponsible use of a vehicle, so that the standards applied when assessing entrustment of a vehicle should not necessarily apply to assessing entrustment of a firearm.

The POLYMER80 Defendants do cite one Georgia decision dealing with entrustment of a firearm, *McBrayer v. Dickerson*, 192 Ga. App. 725, 386 S.E.2d 173 (1989), to support the argument that the act of entrusting a firearm in kit form to a minor such as J.C. does not suffice to state a claim for negligent entrustment of a firearm under Georgia law. They overlook, however, the decision of the United States District Court for the Southern District of Georgia in *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532 (S.D. Ga. 1995), in which the court, interpreting Georgia law, held that for the purpose of determining whether entrustment of a firearm was negligent Georgia does follow the law of negligent entrustment as summarized in the Second Restatement of Torts §390. Section 390 provides that:

> One who supplies directly or through a third person a chattel for the use of another *whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others* whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Knight*, 889 F. Supp. at 1539, *quoting* Restatement Second of Torts §390 (emphasis in *Knight*).

Thus, under *Knight* and Georgia law as interpreted in *Knight*, entrusting a firearm to someone who foreseeably will use it irresponsibly due to “youth” or “inexperience”

is indeed a negligent entrustment. The *Knight* court also pointed out that Wal-Mart's act of selling a firearm to a mentally disturbed purchaser who later used that firearm to commit suicide was proximately causally connected to the suicide, noting that it "is basic common law that defendants remain liable where intervening acts between the negligence and the ultimate harm were foreseeable." *Knight*, 889 F. Supp. at 1541, *citing Milton Bradley Co. v. Cooper*, 79 Ga. App. 3023, 53 S.E.2d 761 (1949). It is reasonably foreseeable and indeed obvious to a reasonable seller of firearms or firearm components that selling such dangerous instrumentalities to minors would lead to their irresponsible and dangerous misuse by the minor purchaser, as the Complaint alleges occurred in this case.

In *McBrayer*, on which the POLYMER80 Defendants rely, "the evidence was uncontroverted that the [minor] appellant knew how to operate the pistol, and there was no evidence that the appellant had ever been reckless with firearms, much less habitual in that vice." *McBrayer*, 192 Ga. App. at 725. In *McBrayer*, therefore, the minor had a track record suggesting to a reasonable entrustor, albeit incorrectly, that he would not be irresponsible in his use of the firearm despite his status as minor. In this case, however, as alleged in the Complaint, the POLYMER80 Defendants

would have no such exculpatory knowledge about J.C.'s experience and ability to use firearms safely. A reasonable seller in their position at the time of the sale to J.C. would or should know only that J.C. was a minor under the age of eighteen, so that a sale of a handgun to her would violate federal law and so that, in the absence of contrary information such as that available in *McBrayer*, which the POLYMER80 Defendants did not have, the seller would reasonably foresee a risk of irresponsible use of the firearm by the purchaser. Entrustment of a firearm kit to such a minor was negligent.

**The Complaint Informs the Defendants in Detail of the Factual Basis for Plaintiff's Claims, Providing Adequate Notice of the Plaintiff's Claims and Supporting Factual and Legal Grounds**

The POLYMER80 Defendants complain that the pleading is of a "shotgun" nature, commingling allegations against the various Defendants. (DE 20 at 5-6). Even a cursory review of the Complaint will reveal, however, that it contains over a dozen paragraphs of factual allegations explaining in detail exactly how J.C. obtained the weapon kit sold by the Defendants and assembled it into the operational firearm with which she played and with which she shot Z.T. The Complaint also

contains elaborate descriptions of the kits sold by Defendants, their business practices, and their procedures (or, more accurately, lack of procedures) for verifying the eligibility of their purchasers under the multiple quoted federal statutes to obtain firearms. (DE 1 at ¶¶12-25).

The United States Supreme Court has specified the standard for the detail of pleading required in a federal civil action. A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See* Fed. R. Civ. Pro. 8(a)(2) (requiring pleading of a "short and plain statement of the claim showing that the pleader is entitled to relief"). Pleading "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. What is required is *not* a showing of "probability" at the pleading stage, but only "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556. While disregarding purely conclusory allegations, a court ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should

"assume" the 'veracity" of all "well-pleaded factual allegations" "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court should accordingly "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

The Complaint in this case, as explained above, goes far beyond mere conclusions and contains detailed factual allegations regarding the Defendants' conduct, sale of the firearm kit to J.C., J.C.'s use of the kit, and the resulting shooting of Z.T. The detail in the allegations is more than enough to meet the *Iqbal/Twombly* plausibility standard and to allow all Defendants to respond both factually and legally to the allegations. If the Court does request or require a reframing or reformatting of the allegations, the Plaintiff requests an opportunity to amend the Complaint accordingly.

**The Protection of Lawful Commerce in Arms Act Does not Preempt this Action Since the Exceptions for Claims of Negligence Per Se and Negligent Entrustment Apply**

The POLYMER80 Defendants argue that the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§7901 et. seq. (PLCAA), preempts this action. (DE 20 at 15-18). As the POLYMER80 acknowledges and as Plaintiff has pled, however, the PLCAA contains several exceptions to preemption of claims against firearm sellers and manufacturers, including exceptions for actions based on claims of negligence per se or negligent entrustment. (DE 1 at ¶31; DE 20 at 17, *citing* 15 U.S.C. §7903(5)(A)(ii)). As explained above, the Plaintiff has pled causes of action for negligence per se and negligent entrustment under applicable Georgia law, so the PLCAA exceptions apply and this action is not preempted.

For the reasons explained above, the Court should deny the Motion to Dismiss both as to the claim of negligence per se and the claim of negligent entrustment. As explained above, the Complaint provides more than adequate factual and legal allegations to allow the Defendants to respond, and they have indeed responded. If the Court nevertheless concludes that the Complaint should be reformatted for additional clarity, the Plaintiff requests leave to do so.

Respectfully submitted,

**s/*Edward S. Schwartz***
Edward S. Schwartz,
Florida Bar No. 346721 (admitted pro hac vice)
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, FL 33145
Tel: (305) 371-6000
eschwartz@gslawusa.com
ISENBERG & HEWITT
Melvin L. Hewitt, Jr.
Georgia Bar No. 350319
600 Embassy Row, Suite 150
Atlanta GA 30328
T 770 351 4400
F 770 828-0100
mel@isenberg-hewitt.com
Michael Davis
Florida Bar No. 330094 (admitted pro hac vice)
BOONE & DAVIS
2311 North Andrews Avenue
Fort Lauderdale, FL 33311
T 954-566-9919
F 954-556-2680
MDavis@boonedavis.com

**Counsel for Plaintiff**

**CERTIFICATE OF SERVICE**

The undersigned counsel for Plaintiff hereby certifies that the foregoing was filed and served through the CM/ECF system of this Court, and thereby served on counsel on the attached service list as registered with the CM/ECF system, this 5th day of June, 2023.

**s/*Edward S. Schwartz***
Edward S. Schwartz,
Florida Bar No. 346721 (admitted pro hac vice)
Gerson & Schwartz, P.A.
1980 Coral Way
Miami, FL 33145
Tel: (305) 371-6000
eschwartz@gslawusa.com

**SERVICE LIST**
**SHARP v. POLYMER 80 etc., et. al.**
**Case No.: 7:23-cv-33-WLS**

| | |
|---|---|
| **Edward S. Schwartz, Esq.**<br>Florida Bar No. 346721<br>(admitted pro hac vice)<br>eschwartz@gslawusa.com<br>filing@gslawusa.com<br>Gerson & Schwartz, P.A.<br>1980 Coral Way<br>Miami, Florida 33145<br>Telephone: (305) 371-6000<br>Facsimile: (305) 371-5749<br>**Melvin L. Hewitt, Jr.**<br>Georgia Bar No. 350319<br>mel@isenberg-hewitt.com<br>Isenberg & Hewitt<br>600 Embassy Row, Suite 150<br>Atlanta, Georgia 30328<br>Telephone: (770) 351-4400 | **James R. MIller, Esq.**<br>Georgia Bar No. 159080<br>jmiller@langdalelaw.com<br>Langdale Valloton, LLP<br>1007 North Patterson Street<br>Valdosta, Georgia 31603-1547<br>Telephone (229) 244-5400<br>**Matthew J. Orme**<br>Utah Bar No. 13323<br>(admitted pro hac vice)<br>Matt.orme@dentons.com<br>111 S. Main Street, Suite 2400<br>Salt Lake City, Utah 84111<br>Telephone: (801) 415-3000<br>*Attorneys for Defendant DeltaTeamTactical.com* |

| Facsimile: (770) 828-0100<br><br>**Michael Davis**<br><br>Florida Bar No. 330094<br><br>(admitted pro hac vice)<br><br>MDavis@boonedavis.com<br><br>Boone & Davis<br><br>2311 North Andrews Avenue<br><br>Fort Lauderdale, Florida 33311<br><br>Telephone: (954) 566-9919<br><br>Facsimile: (954) 556-2680<br><br>*Attorneys for Plaintiff* | **R. Thomas Warburton**<br><br>twarburton@bradley.com<br><br>Bradley Arant Boult Cummings LLP<br><br>One Federal Place<br><br>1819 5th Avenue North<br><br>Birmingham, Alabama 35203<br><br>Telephone: (205) 521-8987<br><br>Facsimile: 9205) 488-6987<br><br>*Attorneys for Defendants*<br><br>*Polymer 80, Inc. And*<br><br>*Polymer80 Enterprise Properties, LLC* |
|---|---|