IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| SHAMIAH SHARP, as mother, natural guardian and Next friend of Z.T., a minor, residents and citizens of Georgia,<br><br>    Plaintiff,<br><br>vs.<br><br>POLYMER80 INC., a Nevada corporation, POLYMER80 ENTERPRISE PROPERTIES, LLC, a Nevada Limited Liability Company, and DELTATEAMTACTICAL.COM, a Utah Limited Liability Company d/b/a DELTA TEAM TACTICAL,<br><br>    Defendants. | CIVIL ACTION<br><br>CASE NO. 7:23-cv-33-WLS |

### DELTATEAMTACTICAL.COM'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11 AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant DeltaTeamTactical.com d/b/a/ Delta Team Tactical ("Delta"), pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure and Local Rule 7.1, hereby moves for the imposition of appropriate sanctions against Plaintiff's counsel.

### RELIEF SOUGHT AND SUPPORTING GROUNDS

Delta respectfully requests that the Court enter Rule 11 sanctions, including available monetary and nonmonetary sanctions, against Plaintiff's counsel. Delta seeks Rule 11 sanctions as a result of the assertion of claims against Delta that lack a factual basis and are demonstrably false. In her Complaint, Plaintiff asserts claims of negligent entrustment and negligence per se against both Delta and Defendants Polymer80, Inc. and Polymer80 Enterprise Properties, LLC (the "Polymer80 Defendants").[1] Plaintiff specifically alleges that Defendants distributed components of a firearm to a

---

[1] Delta and the Polymer80 Defendants are referred to collectively as "Defendants."

1

minor identified as "J.C." which J.C. subsequently assembled and used to cause injuries to minor Z.T. It is on behalf of Z.T. that Plaintiff brings this lawsuit. In the Complaint, Plaintiff makes general allegations as to all Defendants and fails to distinguish between the alleged actions of the Polymer80 Defendants and the alleged actions of Delta (which is a separately owned and operated and legally distinct entity). This, in and of itself, is an improper manner of pleading (*see* Doc. 15-1, p. 13-15), and, as will be explained below, it was almost certainly employed by Plaintiff's counsel as a tactic to conceal their inability to credibly link Delta to the subject incident.

Plaintiff's Complaint is pled in a shotgun style that levels all allegations against all three Defendants equally, without any effort to differentiate between them. As such, it is entirely devoid of specific allegations, information, or evidence connecting Delta to the subject firearm or the subject incident. Puzzled by its inclusion in this lawsuit, Delta reviewed its own business records and was unable to locate any record of having sold or delivered firearm components during the relevant time frame to the geographic location alleged in the Complaint. Delta has informed Plaintiff's counsel of the results of its internal investigation and submitted an affidavit informing them that Delta was named as a defendant in error.

Accordingly, Delta has requested that Plaintiff either dismiss it from the lawsuit or, failing that, provide information or evidence supporting Plaintiff's continued insistence on Delta's involvement in the subject incident. In response, Plaintiff provided exactly two items: (1) Valdosta Police Department Supplemental Report for Case Number 2105010124 (the "Police Report") and (2) a screenshot of Polymer80, Inc.'s website taken in February 2023 (the "Polymer80 Website"). As Delta's counsel has explained to Defendant, these materials do shed considerable light on things, but not in a way that supports the inclusion of Delta as a Defendant. Rather, these documents only serve to thoroughly disprove the allegations against Delta. The Police Report shows that the components used to inflict injury upon Z.T. are not components that Delta has manufactured, sold, or distributed.

And the Polymer80 Website only shows that, nearly two years after the subject incident, Delta had begun distributing a different Polymer80 product. Not only was that particular component not involved in the shooting, but Delta did not begin selling or distributing it until October 3, 2022 – more than a year after the incident giving rise to this lawsuit. This has all been disclosed and explained to Plaintiff's counsel, who, rather than engaging meaningfully with Delta's counsel or taking corrective action, has become essentially noncommunicative.

By failing to perform an adequate investigation before including Delta as a defendant in the case, by concealing its lack of an evidentiary basis insofar as Delta is concerned through improper "shotgun" pleading practices, and by refusing to dismiss Delta after being confronted with uncontroverted evidence that its conclusions are flawed and its assumptions are erroneous, Plaintiff's counsel has plainly violated Rule 11. Accordingly, the Court should grant the Motion and award appropriate sanctions against Plaintiff's counsel, including, but not limited to, an award of Delta's reasonable attorney's fees in defending against and responding to Plaintiff's Complaint and for filing and pursuing this Motion.

## STATEMENT OF FACTS[2]

1. Plaintiff is the mother of minor Z.T. On March 20, 2023, Plaintiff filed a Complaint asserting claims of negligent entrustment and negligence per se against Delta and the Polymer80 Defendants. (Compl. ¶¶ 6–9; 28–31).

2. Plaintiff alleges that minor J.C. assembled a firearm from components distributed to J.C. by Defendants. (Id. ¶¶ 19–20, 22).

3. J.C. then discharged the firearm while playing with it at J.C.'s home, seriously injuring Z.T., who was struck by the bullet. (Id. ¶¶ 23–26).

---

[2] As part of the Statement of Facts, Delta summarizes relevant allegations in the Complaint for background purposes only. Delta does not admit these allegations to be true or accept them as established fact.

4. In the Complaint, Plaintiff alleges that Delta participated in the sale and delivery of the components which are alleged to have been used to cause the injuries to Z.T. (Id. ¶ 19–22).

5. In making these allegations, Plaintiff refers to Defendants collectively and does not differentiate between Delta and the Polymer80 Defendants. The Complaint states in relevant part:

> 19. At a time before May 1, 2021, J.C., using personal funds obtained by her from her own employment, purchased a ghost gun kit, including a frame blank, components and jig such as those referenced in Paragraph 12, **from Defendants. J.C. purchased the kit and its components online from Defendants** without appearing in person at any firearms shop or dealer to obtain them and directed the Defendants online to ship the kit and components to her physical residential address in Georgia.
>
> 20. **The Defendants delivered the frame blank and other components of the ghost gun kit purchased by J.C. to J.C. at her residential address in Valdosta, Georgia.**
>
> 21. When shipping the frame blank and other ghost gun components to J.C., **the Defendants did not require or perform a background check on J.C. and made no effective attempt to verify her age or to verify that she was not a minor.**
>
> 22. Using **instructions provided by the Defendants** as well as instructional videos located online, J.C. was able to and did assemble a completed firearm, specifically a Glock style handgun, using the kit and components **purchased from the Defendants.**

(Id. ¶ 19–22) (emphasis added).

6. Delta is a separate and wholly distinct legally entity from the Polymer80 Defendants.

7. As part of its defense of this action, Delta conducted a thorough review of its records and was unable to locate any record or documentation that would support Plaintiff's allegations regarding the sale and delivery of components by Delta to the geographic area alleged in the Complaint during the relevant time period.

8. In September 2024, counsel for Delta and Plaintiff corresponded on various occasions via phone and email during which Delta explained that it was not involved in the sale or delivery of the subject components and that Plaintiff did not have a factual basis to support its claims against Delta. A summation of this correspondence was provided to Plaintiff's counsel in a formal letter sent by Delta's counsel on October 31, 2024 ("Oct. 31 Letter") (A true and correct copy of the Oct. 31

Letter is attached as <u>Exhibit 1</u>).

9.      In the Oct. 31 Letter, Delta reiterated that it had been named in the lawsuit in error and that Plaintiff did not have a factual basis supporting its claims against Delta. The Oct. 31 Letter provides in relevant part:

> Over a month ago, Mr. Gerson and I [Matt J. Orme, Counsel for Delta] had a telephone discussion in which I explained my client's concern about having been named in this lawsuit despite its belief that it was not involved in the sale or delivery of the components. During that call, Mr. Gerson indicated that he would like to get that matter cleared up because he did not want to be in a situation in which his client had asserted false claims against a party. On September 17, 2024, via email, I reiterated my client's concerns and requested evidence or the disclosure of the factual basis that would tie Delta's conduct to the injuries identified in the Complaint. On September 18, 2024, in response to this email, Mr. Gerson sent what he described as "an incomplete version of the police report" and stated that "[w]e believe the police discovered packing labels when investigating the shooting."
>
> On the same day that Mr. Gerson provided the "incomplete version of the police report," I sent a follow-up email indicating that the document that Mr. Gerson provided did not reference or mention Delta at all. We requested that you disclose the basis for your client's belief that packing labels were found at the scene or any other evidence connecting Delta to the injuries sustained by Z.T. After having never received a response to my September 18, 2024 follow-up email, on October 8, 2024, I followed-up again in a further effort to understand if your client possesses a factual basis for asserting claims against Delta. Again, you failed to respond.

(Ex. 1, p. 2)

10.     Due to Plaintiff's failure to respond to Delta's repeated requests for information, the Oct. 31 Letter formally requested that Plaintiff provide information or evidence to support its claims against Delta by November 7, 2024. The Oct. 31 Letter also gave formal notice to Plaintiff that, if Plaintiff lacked evidentiary support and could not articulate a factual basis for reasonably believing that discovery would uncover supporting evidence, then maintaining the present action against Delta would be improper and sanctionable. (Ex. 1, p. 3).

11.     On November 12, 2024, Plaintiff's counsel sent a reply letter ("<u>Nov. 12 Letter</u>") wherein it disclosed its evidentiary basis for maintaining claims against Delta. (A true and correct copy of the Nov. 12 Letter along with its accompanying exhibits is attached as <u>Exhibit 2</u>).

12. The Nov. 12 Letter included two attachments: (i) the Police Report and (ii) the Polymer80 Website. (*See* Ex. 2 and Exhibits 1 & 2 thereto).

13. The Nov. 12 Letter indicates that Plaintiff's counsel obtained these documents prior to filing the Complaint and that they constituted Plaintiff's counsel's entire basis for speculating that Delta could have potential liability for this incident. (Ex. 2, pg. 1).

14. The Nov. 12 Letter states in relevant part:

> Page 3 of the laboratory report attached to the supplemental report (at Page 19 of Exhibit 1) contains an inventory list of items 'found under suspect's bed," including multiple boxes containing Polymer80 kits, each identified by a distinctive SKU number. The third Polymer80 box referenced on Page 3 of the Laboratory Report/Page 19 of Exhibit 1 references a "Glock style polymer pistol frame," identified as a "PF940C 80% compact frame," together with a "jig," "drill bits" and "frame parts." This item is clearly one of the "ghost gun" kits obtained by J.C. This particular kit is further identified by its SKU number, "P80-PF940CV1-BLK."
>
> While Polymer80, to the best of our knowledge, is no longer selling its kits online, we do have a screenshot of the Polymer80 website as it existed in February 2023, when we were preparing the Complaint … The preserved Polymer80 website page clearly indicates that the "PF940CV1" compact version, in black (i.e. "BLK") was one model of ghost gun kit being sold by Polymer80 at the time, as well as being one of the ghost gun kit models purchased by J.C. The website age for this model clearly indicates that, unlike other models of ghost gun kit sold directly through the Polymer80 website, the PF940CV1 was "Available exclusively through Delta Team Tactical" as a distributor.

(Ex. 2, p. 1–2).

15. On November 20, 2024, Delta sent a follow up letter to Plaintiff's counsel ("Nov. 20 Letter"), wherein Delta identified key factual inaccuracies and mistaken assumptions in the Nov. 12 Letter. To confirm the absence of other potential evidence, Delta also stated that it "understood [that the Valdosta Police Report and the Polymer80 website screenshot] constitute the entirety of the evidence in [Plaintiff's] possession which allegedly links Delta to this case." (A true and correct copy of the Nov. 20 Letter is attached as Exhibit 3.) This statement has never been disputed by Plaintiff's counsel.

16. The Nov. 20 Letter also offered the following factual clarifications:

> (1) The pistol frame used to inflict the injury alleged in the Complaint was a PF45-GRY Polymer 80 Glock 20/21 PF45 80% standard pistol. *See* Report on .pdf pg. 16 of November 12 Letter.
>
> (2) The pistol frame you allege was distributed by Delta Team Tactical ("Delta") is described as P80-PF940CV1-BLK—a frame that was found in a book bag at the scene of the events in question **after** the shooting took place. In other words, the frame you allege was distributed by Delta was not the frame used to carry out the shooting.
>
> Notwithstanding the above facts, in the Complaint you filed, you allege that Delta "sold" and "supplied" the frame that was used to inflict injury on the Plaintiff. [*See* Complaint, ¶19-21, 24, 28, etc.] In light of the police reports and the representations contained in the November 12 Letter, this is clearly not true …
>
> In the November 12 Letter, you indicate that you have "a screenshot of the Polymer80 website as it existed in February 2023 …" which indicates that this model was "available exclusively through Delta Team Tactical." The November 12 Letter further alleges that "the report does reference J.C.'s possession of an item that could only have been purchased through Delta Team Tactical." Apparently, you assumed that because Delta maintained a program to exclusively distribute certain models of Polymer80 frames in 2023, that it was the party that distributed the P80-PF940CV1-BLK to J.C. prior to the May 1, 2021 incident. **This assumption is wrong and readily disprovable, as Delta did not enter into any exclusive arrangement with Polymer80 until October 3, 2022—more than a year after the shooting event described in the Complaint had occurred.**
>
> Perhaps more importantly, the P80-PF940CV1-BLK frame (i.e., the frame you falsely claim was sold and distributed by Delta) was not even the frame used to inflict injury on the plaintiff Z.T. The frame involved in the shooting was a PF45-GRY Polymer 80 Glock 20/21 PF45 80%. That type of frame was not, as a matter of fact, distributed by Delta at all.

(Ex. 3, p. 1–2) (emphasis in original)

17. Having shown Plaintiff's counsel the fundamental flaws and inaccuracies of the Nov. 12 Letter, and there being no other evidentiary basis for linking Delta to the allegations in the Complaint, Delta demanded that Plaintiff's counsel dismiss the claims against Delta by December 4, 2024. (Ex. 3, p. 2).

18. Delta also offered to provide any additional information requested by Plaintiff to verify the clarifying and correcting information set forth in the Nov. 20 Letter. (Ex. 3, p. 2).

19. On February 3, 2025, Delta's counsel provided Plaintiff's counsel with a signed

affidavit from Gino Carnesi, Delta's Senior Vice-President of E-commerce & Compliance (the "Carnesi Affidavit"). *See* Carnesi Affidavit, attached hereto as Exhibit 4.

20. The Carnesi Affidavit confirms the following:

   a. Plaintiff's position is that its basis for including Delta as a Defendant is that Plaintiff's counsel saw on Polymer80's website that Delta, as of 2023, was the exclusive distributor of the "PF940CV1 model.

   b. According to the Complaint, the shooting event took place in May 2021.

   c. The Polymer80-Delta exclusive distributor relationship for certain models started in October 2022—eighteen months after the shooting event.

   d. Delta never sold the frame used in the shooting event or the frame Plaintiff asserts was distributed by Delta during the ten (10) months leading up to the shooting event.

   e. Delta never distributed any parts to the address listed in the police reports (2104 Melrose Drive) where the shooter lived and which was confirmed by the shooter that such location was where the frame was delivered.

   f. **The black PF940CV1 is not the frame identified in the police reports as the part used in the shooting**. **The PF45-Grey model of Polymer 80 is the frame that was used according to the police reports. Accordingly there is no connection between Delta and the frame allegedly used to inflict the harm**.

   g. Delta did not even carry the PF-Grey model of Polymer 80 until April 27, 2022—12 months after the shooting event.

21. Plaintiff's counsel received the Carnesi Affidavit but failed to dismiss the claims against Delta.

## ARGUMENT AND CITATION OF AUTHORITY

### I.     Applicable Law.

Federal Rule of Civil Procedure 11 prohibits attorneys (and their clients) from filing claims that lack a basis in law or fact. As such, Rule 11(b) imposes on attorneys the duty to certify that:

(1) [an action] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery

Fed. R. Civ. P. 11(b)(1)–(3).

The Eleventh Circuit has identified three instances when Rule 11 sanctions are justified, including the filing of "a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998). Rule 11 explicitly requires that a complaint be well grounded in fact. Donaldson v. Clark, 819 F.2d 1551, 1560 (11th Cir. 1987). "A defendant must not be joined, or claim asserted against a defendant merely in the hope that discovery will turn up something against that defendant." Mike Ousley Prods., Inc. v. Cabot, 130 F.R.D. 155, 159 (S.D. Ga. 1990), *quoting* Whittington v. Ohio River Co., 115 F.R.D. 201, 206 (E.D. Ky. 1987). Rule 11 sanctions are warranted where a party shows a "deliberate indifference to obvious facts." Davis v. Carl, 906 F.2d 533, 537 (11th Cir. 1990).

When signing and filing a complaint in federal court, an attorney certifies that he or she has made an inquiry that is "reasonable under the circumstances." Fed. R. Civ. P. 11(b). As stated by the Eleventh Circuit, by filing a pleading, "an attorney certifies that he or she has conducted a reasonable

inquiry and that the pleading is well-grounded in fact." Baker, 158 F.3d at 524. Rule 11's obligations do not only exist at the time that a claim, brief, or other pleading is originally filed. Under the 1993 amendments to Rule 11, those obligations also apply when the party and its counsel's representations to the Court are reaffirmed through the continued advocacy of positions "after learning that they cease to have any merit." Jones v. Int'l Riding Helmets, Ltd., 49 F.3d 692, 694 n.3 (11th Cir. 1995) (citing the Rule 11 Advisory Comm. Notes). An attorney has an ongoing obligation to inquire and continuously evaluate the merits of each claim asserted, and Rule 11 authorizes sanctions where a position is insisted upon despite no longer being tenable. Battles v. City of Ft. Myers, 127 F.3d 1298, 1300 (11th Cir. 1997). *See also* Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir. 1997); Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991) *quoting* Collins v. Walden, 834 F.2d 961, 965 (11th Cir. 1987)("When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest.").

## II. Plaintiff Had No Reasonable Factual Basis for Naming Delta as a Defendant at the Time of Filing the Complaint.

The contents of the Nov. 12 Letter conclusively show that Plaintiff's counsel's inclusion of Delta in the Complaint was entirely speculative and unsupported by a reasonable factual basis. To conceal this, Plaintiff aggregated and indiscriminately pled its factual allegations against all Defendants as a group in a transparent and wholly improper attempt to obscure its lack of evidence against Delta. The Nov. 12 Letter identifies the Police Report and the Polymer80 Website as Plaintiff's sole means of identifying Delta as an entity of interest, but, at best, those items may have justified further pre-suit investigation. As the Nov. 20 Letter explains, and as further pre-suit investigation would have revealed, those items provide no basis for including Delta in the lawsuit.

The Police Report identifies the pistol frame used in the incident alleged in the Complaint as a PF45-Gry Polymer80 Glock 20/21 PF45 8% standard pistol. *See* Ex. 2, pg. 16. The Police Report also makes reference to a P80-PF940CV1-BLK frame or component. Id. The latter component,

however, was found in a bookbag located under a bed after police had questioned J.C. Id. As the Police Report makes clear – and as the Nov. 12 Letter clearly admits – the P80-PF940CV1-BLK frame was not used in the subject incident. It was merely present in the same residence. *See also* Table attached as Exhibit B to Carnesi Affidavit. While Plaintiff's counsel may have mistakenly believed that Delta could have sold the P80-PF940CV1-BLK product to J.C., Plaintiff failed to establish any conceivable link of Delta to the PF45-Gry Polymer80 Glock 20/21 PF45 8% standard pistol, which is the component of actual relevance to Plaintiff's claim.

Importantly, no other evidence or information beyond the Police Report and the Polymer80 Website has ever been identified by Plaintiff's counsel as supporting the inclusion of Delta in the Complaint. Given the manifest inadequacy of that "evidence," Plaintiff's lawyers plainly failed to meet their obligations under Rule 11, as they neither conducted "an inquiry reasonable under the circumstances" before filing the Complaint nor did their factual contentions against Delta have actual evidentiary support. While the P80-PF940CV1-BLK was recovered by police as part of its search of the premises, the Police Report makes it abundantly clear that it was not a component of the firearm used by J.C. in the shooting. The complete irrelevance of the P80-PF940CV1-BLK product to Plaintiff's claims is underscored by the fact that the Complaint never once mentions it. If the presence of a second frame under a bed had any actual significance or probative value, it would have surely been stated in the Complaint. Plaintiff and her counsel purposefully suppressed this information in preparing its Complaint, which is sanctionable behavior. *See* Davis, 906 F.2d at 537 (stating that deliberately disregarding obvious facts is sanctionable conduct under Rule 11). Counsel's eagerness to include Delta can only be explained as an attempt to engage in a discovery fishing expedition and to artificially expand the potential pool of parties from whom recovery could be extracted. Mike Ousley, 130 F.R.D. at 159. This purpose, of course, is improper and is the very type of conduct that is prohibited by and sanctionable under Rule 11.

In sum, the Police Report and the Polymer80 Website do not provide Plaintiff with a reasonable factual basis for making allegations against Delta. In fact, they do the exact opposite. The Police Report makes it clear that the lone component being (mistakenly) attributed by Plaintiff to Delta was not a part of the firearm used by J.C. in the incident. Plaintiff's counsel should have understood this after a reasonable review of the Police Report, and, in fact, it seems clear that they did, as the Complaint is built upon obfuscation, neither acknowledging nor addressing the obvious distinctions between (a) the various Defendants, who are not a single actor but are treated as one at all times by the Complaint, and (b) the components used by J.C. in the shooting and the entirely separate component found under a bed. This manner of pleading is indicative of an improper purpose, a lack of pre-suit investigation, and a lack of evidentiary support, all of which runs afoul of Rule 11.

### III. **Plaintiff Is Further Violating Rule 11 By Maintaining Claims Against Delta Despite Learning the Falsity of Allegations in the Complaint.**

Whatever threadbare basis Plaintiff's counsel may claim supported its assertion of claims against Delta has since been eradicated. In recent weeks, Delta has engaged in various forms of informal and formal communication with Plaintiff's counsel explaining Delta's position and providing information regarding the inaccuracy of the allegations in the Complaint. In the Nov. 20 Letter, Delta explained the obvious factual distinction between the components identified in the Police Report as having been used in the incident and the component allegedly attributable to Delta, which was not used in the incident. And, in response to Plaintiff's reliance on a statement on the Polymer80 Website identifying Delta as a distributor of certain components, the Nov. 20 Letter explains that Delta did not have any exclusive arrangement with Polymer80 until October 3, 2022 (more than a year after the incident occurred).[3] Thus, even assuming that Plaintiff could have reasonably relied on

---

[3] It should also be noted that this is something that a reasonable pre-suit investigation would have uncovered, in which case Delta would have been spared the expense and other burdens associated with being named in this lawsuit.

the Polymer80 Website to assert claims against Delta initially, it can no longer do so. The Nov. 20 Letter and the Carnesi Affidavit fully informed Plaintiff of the inaccuracy of its allegations and dispensed with any notion that Delta was linked to the incident alleged in the Complaint.

Rule 11 clearly requires that parties change their position in the light of new information or when it becomes apparent that a party's position is no longer supported by the facts. Avirgan, 932 F.2d at 1582. Delta has provided Plaintiff's counsel with ample opportunity (even beyond the 21-day safe harbor provision of Rule 11(c)(2)) to comply with the obligations imposed by Rule 11. Yet Plaintiff's counsel did not provide a meaningful or substantive response to the Nov. 20 Letter, nor has Plaintiff's counsel taken any action to correct the clearly false allegations against Delta or dismiss Delta from the case altogether. Delta can only assume that Plaintiff's counsel intends to stay the course, pursuing its claims despite knowing they are baseless and false. Federal courts have made clear that deliberately ignoring known facts places a party in jeopardy of Rule 11 sanctions. Davis, 906 F.2d at 537.

An attorney that asserts and insists on pursuing "factually groundless allegations" is subject to sanctions under Rule 11. Id. That is the case here. Plaintiff's counsel lacked a factual basis for making the allegations against Delta when the Complaint was filed, and the continued pursuit of false allegations against Delta despite receiving clarifying and exculpatory information only serves to violate Rule 11 further.

### IV.     **The Court Should Sanction Plaintiff's Counsel by Ordering Plaintiff's Counsel to Pay Delta's Reasonable Attorney Fees.**

Rule 11 explicitly allows for sanctions where a court finds that an attorney, law firm, or party violated one of the provisions of Rule 11(b). *See* Fed. R. Civ. P. 11(b). District courts have broad discretion to fashion an appropriate sanction under Rule 11. *See* Baker, 158 F.3d at 521; Mike Ousley, 130 F.R.D. at 159. Rule 11 provides that the sanction may "include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order

directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

As explained above, Plaintiff's counsel has violated Rule 11. The Court should therefore impose sanctions against them. Due to the false allegations included in the Complaint, Delta has incurred significant expense in the form of attorney fees and costs in defending against the claims in this case. It has further incurred attorney fees for counsel's attempts to resolve the issues presented in this Motion without court intervention. But those attempts have been to no avail. As such, Delta has incurred additional expenses in bringing this Motion. And Delta will continue to incur expenses in defending against allegations that are demonstrably false. Thus, the Court should grant the Motion and impose sanctions including, but not limited to an order that Plaintiff's counsel pay Delta's reasonable attorney fees for the defense of this action and for filing this Motion.

## CONCLUSION

Plaintiff's counsel has disclosed that it named Delta as a defendant in this lawsuit based on a mistaken belief that a product found at the subject premises was sold or distributed by Delta. This supposed basis for inclusion of Delta is no basis at all, however, for the following reasons: (1) Delta did not actually begin distributing the product in question until well *after* the subject incident, (2) the product in question was not used or otherwise involved in any way in the subject incident, and (3) there is no factual basis whatsoever linking Delta to any products actually involved in the shooting. Without question, Plaintiff's counsel should have recognized this and, at minimum, conducted a far more thorough pre-suit investigation insofar as Delta was concerned. The failure to do so is sanctionable in and of itself, as no person or entity should be haled into federal court on the basis of the tenuous, disjointed, and threadbare information which Plaintiff possessed at the time she filed her pleading.

The fact that Plaintiff's counsel fully recognized its inadequate factual basis is evident from

the manner in which it pled the Complaint, which avoids any separate treatment of Delta even though Delta is an entirely distinct entity from the Polymer80 Defendants. Worsening matters considerably, Delta has informed Plaintiff's counsel of the fatal flaws underlying Plaintiff's inclusion of Delta as a party defendant and has provided clarifying information, but Plaintiff and her counsel have proved entirely intransigent in the face of Delta's communications, offering no repudiating or contradicting information while simultaneously refusing to take appropriate action to dismiss Delta from this case. Based on the foregoing, Delta respectfully requests that the Court grant the Motion for Sanctions.

Respectfully submitted this 27th day of February, 2025.

ELLIOTT BLACKBURN PC

/s/ *James R. Miller*
James R. Miller
Georgia Bar No. 159080
3016 North Patterson Street
Valdosta, Georgia 31602
229.242.3333
jmiller@elliottblackburn.com

DENTONS DURHAM JONES PINEGAR PC

/s/ *Matthew J. Orme*
Matthew J. Orme (Admitted *Pro Hac Vice*)
Utah Bar No. 13323
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
(801) 415-3000
matt.orme@dentons.com

*Counsel for Defendant DeltaTeamTactical.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2025 the foregoing Rule 11 Motion for Sanctions was filed with the Clerk of Court using the CM/ECF system and served upon all counsel of record via the court's electronic filing system.

ELLIOTT BLACKBURN PC

/s/ *James R. Miller*
James R. Miller
Georgia Bar No. 159080
3016 North Patterson Street
Valdosta, Georgia 31602
229.242.3333
jmiller@elliottblackburn.com
